## JOHN N. KEERAN *v.* JOHN GRIFFITH.

Title to Land—Adverse Patents from State and United States.—Where, in an action of ejectment, plaintiff claimed under a patent from the State of California, dated January 15th, 1856, as of swamp and overflowed lands, acquired under the Act of Congress of 1850, granting the same to the State, and the defendant claimed the same land under a patent from the United States, dated September 10th, 1866 : *held,* first, that both patents were properly admitted in evidence on the trial of the issue of title, as being necessary links in the respective chains of proofs of the parties, but that the question as to which patent conveyed the title, depended on the further fact whether or not the lands were swamp and overflowed, within the meaning of said Act of Congress ; second, that this question was properly determinable, not from the recitals of either patent or the records of either the State or United States Land Office, but upon parol proofs as to the real character of the lands. (*Keeran* v. *Griffith,* 27 Cal. 87, and 31 Cal. 461, and *Keeran* v. *Allen,* 33 Cal. 542, affirmed.)

Act of July 23d, 1866, "to quiet Land Titles in California."—The confirmation of titles, provided for in the first section of the Act of Congress, "to quiet land titles in California," passed July 23d, 1866, does not extend to lands as to which an adverse pre-emption, homestead, or other right had been acquired at the date of the passage of that Act by any settler under the laws of the United

States. Whether or not said section is applicable to titles to any swamp and overflowed lands, is not decided.

EXCEPTIONS MUST BE TAKEN IN COURT BELOW.—The Court will not consider, on appeal, rulings to which no exception was taken in the Court below.

APPEAL from the District Court, Fifth Judicial District, San Joaquin County.

The facts concerning this action are stated in the reports of this case in 27 Cal. 87, and 31 Cal. 461. The principal issue of fact at the trial was as to the character of the land in controversy—whether swamp and overflowed, or dry land. There was evidence given on behalf of defendant, by witnesses Weaman, Lewis, and Thornton, as to the qualities of adjacent lands, more or less dissimilar to the land in dispute, to which plaintiff objected as irrelevant, but, so far as the record shows, did not except to the ruling admitting it.

The charge of the Court to the jury was as follows:

"By the words 'fit for cultivation,' you will understand that condition of the soil, in its natural condition, as will enable a farmer bringing to business a reasonable amount of skill, to raise regularly and annually by tillage, grain or other staple crops. Staple productions are such productions of the soil as have an established and defined character in the commerce of the country, and among them may be reckoned wheat, rye, oats, buckwheat, beans, corn, barley, potatoes, etc.

"If from the evidence you shall find that on the 28th day of September, 1850, the natural and surrounding character of the land was such that regularly and annually one or more of such staple productions could have been successfully cultivated and produced, then such land was not, by reason of being periodically overflowed, rendered thereby unfit for cultivation; but if, on the other hand, such periodical overflows would prevent such successful cultivation of the land in question, then the land must be regarded as embraced within the Act mentioned, and must be counted as land unfit

for cultivation, unless it be first reclaimed and protected in whole or in part, by artificial means, from such overflow."

The plaintiff then and there duly excepted to every part of this charge.

The defendant had a verdict and judgment. The plaintiff moved for a new trial, on ground of alleged errors of law occurring at the trial, and that, in certain specified points, the evidence was insufficient to sustain the verdict, on which, however, the evidence was conflicting. The Court denied the motion, and plaintiff appealed from the judgment and the order denying said motion.

The other facts are stated in the opinion of the Court.

*John B. Hall,* for Appellant.

The plaintiff sues to recover possession of the northwest quarter of Section Seventeen, Township Three south, Range Seven east, containing one hundred and sixty acres, lying near the junction of the San Joaquin and Stanislaus Rivers, and bordering the latter stream on its westerly side. The plaintiff claims title under a purchase and patent from this State, of the entire quarter section, dated January 15th, 1856, for so much swamp and overflowed land.

The defendant entered upon the premises in October, 1863, and he alleges title thereto under a purchase and patent from the United States, dated September 10th, 1866.

The sale by the State was made under an Act of its Legislature, passed April 28th, 1855, entitled "An Act to provide for the sale of the swamp and overflowed lands belonging to this State;" and the sale by the United States was made under an Act of Congress entitled "An Act making further provisions for the sale of the public lands," approved April 26th, 1820. (Lester's Land Laws, 34.)

The patent from the United States to the defendant should have been excluded. The patent simply recites a purchase from the United States and payment made, according to the provisions of the Act of Congress of April 24th, 1820. It

establishes no fact other than the sale and conveyance on the 10th day of September, 1866, to the respondent Griffith. There was no evidence *dehors* the patent, either when it was offered or at any other stage of the trial, showing any incipient right or equity which Griffith had acquired prior to the patent, and to which the latter had relation.

When the offer of this patent was made the plaintiff's patent from the State, of date January 15th, 1856, was in evidence, whereby the plaintiff was brought in privity of title with the defendant's grantor—the United States; for the grant by Congress to the State, of September 28th, 1850, of the "swamp lands," is recited in the patent on which the plaintiff stands.

There is no presumption that the purchaser from the United States received the patent in consummation of either a right of pre-emption or of homestead, antedating the patent; nor is such presumption admissible in the face of existing congressional provisions for the sale of public lands by private entry.

The defendant's patent falls within the rule which permits an impeachment of it at law, and it should have been excluded. (*Doll* v. *Meador*, 16 Cal. 324; *Patterson* v. *Winn*, cited in that case.)

Again: The appellant contends that on September 10th, 1866, when the defendant bought, the title had been confirmed to the State by several provisions of the Act of Congress of July 23d, 1866, to "quiet land titles in California."

*G. W. Tyler*, for Respondent.

The patent was properly admitted, to show that defendant was not a naked trespasser, but was in privity with the United States, and entitled to attack the patent of plaintiff. (*Doll* v. *Meador*, 16 Cal. 295.)

The patent of the United States conveyed the legal title of the land to defendant, unless the land was swamp or over-

flowed, and thus passed to the State by virtue of the congressional grant.

Plaintiff is not in a condition to raise any objection to the patent of defendant, unless the land passed to the State under the Act of Congress.

The Act of Congress of July 23d, 1866, was passed long after the commencement of this suit, and cannot affect defendant's rights.

By the Court, SAWYER, C. J. :

This case has been here twice before, and will be found reported in 27 Cal. 87, and 31 Cal. 461. The precise questions not determined on the former appeals were nearly all disposed of in the similar case of *Keeran* v. *Allen,* 33 Cal. 542, and it is unnecessary to discuss them further.

The patent from the United States to the defendant was properly admitted. The United States Government is the source of title in both parties. Whether the plaintiff or the defendant acquired the title, depends upon the question whether the lands were swamp and overflowed within the meaning of the Act of Congress of 1850, so often cited, or whether the plaintiff acquired the lands under any of the subsequent Acts referred to by him. The case of *Keeran* v. *Allen* disposes of the points made under the Acts of 1855 and 1857.

Conceding the first section of the Act of July 23d, 1866, "to quiet land titles in California," to apply at all to lands claimed under grants from the State as swamp and overflowed, the confirmation provided for does not extend to "lands as to which an adverse pre-emption, homestead or other right has, at the date of the passage of this Act, been acquired by any settler under the laws of the United States." It does not appear in the statement or record whether the defendant did, or did not, before or after the introduction of his patent, in connection with it, introduce testimony to show that he had acquired a "pre-emption, homestead, or other

right" before the passage of the Act, which the patent perfected into a title. The patent was one step in the defendant's proof, and, as such, admissible. There was no objection to it on the specific ground that he had not made any preliminary proof. (*Kiler* v. *Kimbal,* 10 Cal. 267; 16 Cal. 248; *People* v. *Banvard,* 27 Cal. 474.) Nor does there appear to have been any subsequent objection that the proof had not been supplied. It was not one of the grounds of motion for new trial that the evidence was insufficient in this respect to sustain the verdict, and for this reason the statement very properly omits to show whether the defendant introduced any evidence on the point or not. If the appellant relied upon any such want of evidence on the part of defendant to sustain his verdict or to connect a right acquired under the laws of the United States prior to the passage of the Act of 1866, with the patent subsequently issued, he should have made this defect in the evidence appear in his statement, and have specified it as one of the grounds of his motion. The statement very properly only purports to contain the evidence to illustrate the grounds for new trial specified. We must decide the case as it appears in the record, rather than as stated in the briefs; and upon the record it does not appear, that the defendant failed to show a right acquired under the laws of the United States prior to the passage of the Act in question. We cannot presume error; it must be affirmatively shown.

The real contest would seem to have been as to whether the land was swamp or overflowed, within the meaning of the Act of 1850. Upon this point there was such a substantial conflict in the testimony as to bring it within the rule so often announced upon the subject, and we cannot disturb the verdict on the weight of the evidence.

The record does not disclose any exception taken to the ruling of the Court, admitting the testimony of Weaman, Lewis and Thornton. (*McCartney* v. *Fitz Henry,* 16 Cal.

185, 186; *Turner* v. *Tuolumne Water Company*, 25 Cal. 404.) The instruction complained of is substantially the same as that held to be proper in *Keeran* v. *Allen.*

The judgment must be affirmed, and it is so ordered.